IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | 8:16CR64 |
| v. | |
| JESUS GONZALEZ, | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on Jesus Gonzalez's ("Gonzalez") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Filing No. 103). For the reasons stated below, the motion is denied.

**I.     BACKGROUND**

On March 10, 2017, Gonzalez pled guilty pursuant to a written plea agreement (Filing No. 57) to distributing 50 grams or more of a mixture or substance containing methamphetamine, in violation of 21 United States Code § 841(a)(1) and (b)(1). Under Gonzalez's plea agreement with the government, he agreed he would "be held responsible . . . for at least 1.5 kilograms, but not more than 5 kilograms of a mixture or substance containing methamphetamine."

The agreement, which the Court accepted at sentencing, further provided that if Gonzalez truthfully disclosed to the government "all information and evidence [he] has concerning the offense and relevant conduct," and if he otherwise qualified for safety-valve relief under 18 U.S.C. § 3553(f) and United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 5Cl.2, the government would recommend a two-level reduction under § 2D1.1(b)(17) and relief from any applicable statutory mandatory minimum sentence. In his Petition to Enter a Plea of Guilty (Filing No. 56) and at his change-of-plea hearing, Gonzalez acknowledged he faced a mandatory minimum of five

years imprisonment if he did not qualify for the safety valve. Gonzalez also stated he understood that his plea agreement limited his rights to appeal and collaterally attack his conviction and sentence. Gonzalez did retain the right to raise claims of ineffective assistance of counsel.

After Gonzalez pled guilty, the probation office prepared a presentence investigation report ("PSR") on Gonzalez that found him responsible for at least 2.7 kilograms of a mixture or substance containing methamphetamine. The PSR indicated Gonzalez did not qualify for the safety valve because he had not provided the government any information about his involvement in drug trafficking. The PSR calculated Gonzalez's advisory Guidelines range at 87 to 107 months imprisonment (level 29, category I). Gonzalez also remained subject to the statutory mandatory minimum of five years. Gonzalez did not object to the PSR, which report was in line with the plea agreement.

Before sentencing, Gonzalez, through retained counsel Dana C. Bradford, III ("Bradford"), moved (Filing Nos. 61, 62) for "a deviation or variance from a strict application of the [G]uidelines to allow the Court to apply the five year mandatory minimum sentence." In his motion, Gonzalez noted the PSR added "substantial weight to the quantity of methamphetamine attributed to [Gonzalez] in addition to the 118 grams" he admittedly sold on February 17, 2016. At sentencing, the government resisted Gonzalez's motion, noting he had chosen not to provide a safety-valve interview and should not benefit from his status as a first-time offender without doing so.

The Court granted Gonzalez's motion in part over the government's objection. Based largely on Gonzalez's limited criminal history and his success on pretrial release, the Court sentenced him to 72 months imprisonment followed by 5 years of supervised release. Gonzalez did not appeal.

On April 16, 2018, Gonzalez filed the present § 2255 motion, asserting three main grounds for relief. Specifically, Gonzalez alleges Bradford (1) was ineffective in contesting the drug quantity attributed to him in the PSR; (2) made no effort to obtain safety-valve relief for Gonzalez under 18 U.S.C. § 3553(f); and (3) failed to pursue a mitigating-role reduction under the Guidelines. Gonzalez also claims he asked Bradford to appeal these "viable issues," but Bradford failed to follow through.

The Court set Gonzalez's motion for an evidentiary hearing and appointed the Federal Public Defender to represent him. Gonzalez and Bradford both testified at the hearing on August 10, 2018. Having considered that testimony and carefully reviewed the record, the Court finds Gonzalez is not entitled to any relief.

## II. DISCUSSION
### A. Standard of Review

Section 2255(a) allows a prisoner in custody pursuant to a sentence imposed by a federal judge to move to vacate, set aside, or correct his sentence if the sentence was imposed "in violation of the Constitution or laws of the United States." Gonzalez alleges Bradford's mistakes effectively deprived him of his Sixth Amendment right to effective counsel. *See* U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 698 (1984); *Walker v. United States*, 810 F.3d 568, 577-78 (8th Cir. 2016) ("The Sixth Amendment guarantees the right to effective counsel during plea negotiations and the entry of a guilty plea.").

Gonzalez's ineffective-assistance claims are subject to the two-part test articulated in *Strickland*. *See*, *e.g.*, *Holder v. United States*, 721 F.3d 979, 986 (8th Cir. 2013). To prevail under § 2255, Gonzalez must show Bradford's performance was both "deficient"—that is, "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"—and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.

Counsel's performance is deficient when it falls "below an objective standard of reasonableness" judged "on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 688, 690. In evaluating counsel's performance, the Court applies "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *id.* at 689, and avoids "making judgments based on hindsight," *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000).

"[A] criminal defendant alleging prejudice must show 'that counsel's errors were so serious as to deprive'" him of a fundamentally fair and reliable proceeding. *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (quoting *Strickland*, 466 U.S. at 687). To show prejudice in the context of his guilty plea, Gonzalez "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Even "inaccurate advice of counsel about the sentencing guidelines or likely punishment does not render involuntary a defendant's decision to plead guilty, so long as the defendant is informed of the maximum possible sentence permitted by statute and the court's ability to sentence within that range." *United States v. Quiroga*, 554 F.3d 1150, 1155 (8th Cir. 2009). To prove prejudice with respect to his sentence, Gonzalez must show "'there is a reasonable probability that, but for [his] counsel's unprofessional errors,' the result of his sentencing proceeding would have been different." *Palmer v. Clarke*, 408 F.3d 423, 445 (8th Cir. 2005) (alteration in original) (quoting *Strickland*, 466 U.S. at 694).

### B. Drug Quantity

Based on controlled drug buys and Gonzalez's accountability for drugs delivered by his codefendant, Domingo Rivera ("Rivera"), the PSR attributed approximately 2.7 kilograms of methamphetamine to Gonzalez. Gonzalez did not object to that quantity at sentencing.

Now convinced he was accountable for no more than 1.2 kilograms, Gonzalez argues Bradford was ineffective for failing to adequately review the PSR with him and

4

failing to object to what he calls the "erroneously inflated drug quantity" in the PSR.[1] In Gonzalez's view, he should have had a lower Guidelines range. The argument is without merit.

In the plea agreement, Gonzalez agreed with the government that he would be held responsible for at least 1.5 but not more than 5 kilograms of a mixture or substance containing methamphetamine. The Court specifically discussed with Gonzalez the importance of that provision and the impact it could have on his advisory Guidelines range. Gonzalez conferred with Bradford before unequivocally stating he understood. Given all that, Gonzalez cannot have been surprised that he was held responsible for more than 1.2 kilograms. As for Gonzalez's claim that he did not see his PSR until he got to prison and never had an opportunity to review it, Bradford credibly testified at the § 2255 hearing that he reviewed the PSR with Gonzalez, who was out on release after pleading guilty, and thoroughly discussed the drug quantity attributed to him.

Gonzalez simply has not shown the drug quantity attributed to him was wrong. Furthermore, that quantity fell squarely within the range to which Gonzalez knowingly and willingly pled guilty. Bradford was not ineffective for failing to object to that quantity or discuss it further with Gonzalez before sentencing.

### C. Safety Valve

The Court also rejects Gonzalez's claim that Bradford was ineffective for failing "to request an[d] pursue" safety-valve relief. *See* 18 U.S.C. § 3553(f) (authorizing the sentencing court to impose a sentence below a statutory mandatory minimum in certain drug cases if the defendant meets five statutory requirements). "[A] defendant who asserts that counsel was constitutionally ineffective for erroneous advice about the safety valve has 'the burden to show affirmatively that [he has] satisfied each requirement for

---

[1]As the government points out, Gonzalez does not explain how he arrived at 1.2 kilograms, but he clearly objects to being held responsible for the 1,360.8 grams Rivera delivered to Renn Helleberg between September 2015 and December 2015.

the safety valve, including whether truthful information and evidence have been given to the government.'" *Talavera v. United States*, 842 F.3d 556, 559 (8th Cir. 2016) (second alteration in original) (quoting *United States v. Alvarado-Rivera*, 412 F.3d 942, 947 (8th Cir. 2005) (en banc)).

At the § 2255 hearing, Gonzalez admitted he never requested to meet with the government to "truthfully provide[] . . . all information and evidence [he] ha[d] concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan" as required for safety-valve relief under § 3553(f)(5) but testified he would have if he had known he could. According to Gonzalez, Bradford never really mentioned the safety-valve factors or what Gonzalez had to do to be eligible. Noting the attorney appearing for the government at the change-of-plea hearing erroneously stated in summarizing the plea agreement that Gonzalez qualified for the safety valve, Gonzalez testified he thought all he had to do to qualify for relief was to plead guilty. In Gonzalez's view, he was "tricked" into believing he already qualified for safety-valve relief. Gonzalez's testimony rings hollow.

First, in Gonzalez's written plea agreement, which Gonzalez stated he read and reviewed with Bradford, Gonzalez and the government agreed that the government would recommend a two-level reduction under the Guidelines "and relief from any statutory mandatory minimum sentence pursuant to § 3553(f) and § 5C1.2" *if* Gonzalez "truthfully disclose[d] to the United States all information and evidence [he] ha[d] concerning the offense and relevant conduct." Second, Gonzalez's PSR twice noted he had not met the fifth safety-valve requirement—providing the government information about his involvement in drug trafficking. Third, at sentencing, the government—in response to Gonzalez's request for a downward variance based on his status as a first-time offender—emphasized that Gonzalez had chosen not to qualify for a sentence reduction under the safety valve and should not "get that benefit without providing a safety-valve interview."

6

Notwithstanding the government's misstatement at the change-of-plea, Gonzalez was fully aware he had neither met with the government nor made the requisite proffer to qualify for safety-valve relief. To the contrary, Bradford credibly testified he explained the safety-valve factors to Gonzalez before sentencing, but Gonzalez adamantly and consistently refused to cooperate with the government or otherwise provide any information about his drug trafficking, particularly with respect to family members that were involved. Bradford reported Gonzalez did not change his tune until after he went to prison. Post-confinement communications between Gonzalez and his proxy and Bradford admitted into evidence at the § 2255 hearing support Bradford's testimony that Gonzalez refused to participate in a safety-valve interview and make a full proffer to the government until after he began serving his sentence.

Gonzalez has not shown ineffective assistance with respect to the safety valve.

### D. Mitigating-Role Reduction

Gonzalez next argues Bradford was ineffective for failing to obtain a mitigating-role reduction. *See* U.S.S.G. § 3B1.2 (authorizing a decrease of two to four levels to reflect a defendant's mitigating role "in any criminal activity"). According to Gonzalez, he "was just a holder," which he sees as "a minor role." Bradford, in contrast, testified he did not seek a mitigating-role reduction for Gonzalez because after he reviewed the discovery materials he received from the government, he determined Gonzalez could have qualified for an upward role adjustment. Bradford decided it was not in Gonzalez's best interest to raise the issue with the Court.

To qualify for a minor-role reduction, a defendant who is one of several participants in criminal activity "must show that his culpability was relatively minor compared to that of the other participants and that he was not deeply involved in the offense." *United States v. Lopez-Vargas*, 457 F.3d 828, 831 (8th Cir. 2006). "To determine whether a reduction is appropriate, the court compares the acts of each participant in relation to the relevant conduct for which the participant is held

7

accountable and measures each participant's individual acts and relative culpability against the elements of the offense." *United States v. Denton*, 434 F.3d 1104, 1114-15 (8th Cir. 2006) (quoting *United States v. Johnson*, 408 F.3d 535, 538-39 (8th Cir. 2005)).

Applying these standards, the Court finds Gonzalez has not shown he was entitled to a minor-role reduction. Gonzalez was deeply and actively involved in distributing significant quantities of methamphetamine. *See*, *e.g.*, *United States v. Bradley*, 643 F.3d 1121, 1129 (8th Cir. 2011). He acquired large quantities of methamphetamine from Mexico and stored them at his residence in Grand Island, Nebraska. From there, he directly sold pound and half-pound quantities and recruited and directed Rivera to distribute similarly large quantities for him on a regular basis. The Eighth Circuit has "consistently rejected [the] argument that a distributor of controlled substances deserves a minor-role reduction simply because of the presence of a larger-scale upstream distributor." *United States v. Cubillos*, 474 F.3d 1114, 1120 (8th Cir. 2007).

Bradford's decision to not request a mitigating-role reduction was neither unreasonable nor prejudicial. *See Strickland*, 466 U.S. at 689-91.

### E. Failure to Appeal

Gonzalez last argues he asked Bradford to file an appeal, but he failed to do so. "A 'counsel's failure to file a notice of appeal when so instructed by the client constitutes ineffective assistance of counsel for the purpose of section 2255.'" *Yodprasit v. United States*, 294 F.3d 966, 969 (8th Cir. 2002) (quoting *Estes v. United States*, 883 F.2d 645, 648 (8th Cir. 1989)). No showing of prejudice or likely success on appeal is necessary. *See Holloway v. United States*, 960 F.2d 1348, 1357 (8th Cir. 1992).

"For such a claim to succeed, the defendant must show that he manifestly 'instructed [his] counsel to file an appeal.'" *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (alteration in original) (quoting *Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000)). Gonzalez has not done that. *See Nupdal v. United*

*States*, 666 F.3d 1074, 1076 (8th Cir. 2012) ("The judge at a hearing on a motion to vacate is entitled to determine what version of facts presented is most credible.").

In support of his motion, Gonzalez testified that—despite the appeal restrictions in his plea agreement—he told Bradford by telephone three days after his sentencing that he wanted to appeal because he objected to being held responsible for 2.7 kilograms of methamphetamine. According to Gonzalez, Bradford advised him that an appeal was not a good idea because he could receive a higher sentence. Gonzalez stated he dropped the issue because it seemed to him that Bradford no longer wanted to help him.

Based on that testimony, the Court finds Gonzalez did not "manifestly" instruct Bradford to file an appeal. *Walking Eagle*, 742 F.3d at 1082. By Gonzalez's own account, he explored the possibility of appeal with Bradford but decided against it. Even if the Court broadly construes Gonzalez's alleged statements to Bradford as asking him to file an appeal, Gonzalez's ineffective-assistance claim still falls short. Beyond his hearing testimony, Gonzalez has not adduced any evidence to support his claim that he directed Bradford to file an appeal. "A bare assertion by the petitioner that []he made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition." *Barger*, 204 F.3d at 1182.

Here, the Court finds more credible Bradford's testimony that he discussed the right to appeal with Gonzalez, but Gonzalez never asked him to file one. Bradford recalled speaking with Gonzalez after sentencing but stated they discussed Gonzalez's desire to get some of his property returned, not an appeal. That testimony is again supported by the record. Under the circumstances of this case, Bradford was not ineffective for not filing an appeal.

### F. No Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(B), Gonzalez cannot appeal the Court's denial of relief unless the Court issues a certificate of appealability. *See also* Fed. R. App. P. 22(b)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2252(c)(2). To meet this standard in this case, Gonzalez "must demonstrate that reasonable jurists would find the [Court's] assessment of [his] constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As discussed above, Gonzalez has not made that showing.

IT IS ORDERED:
1. Jesus Gonzalez's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Filing No. 103) is denied.
2. No certificate of appealability will issue.
3. A separate judgment in accordance with this Memorandum and Order will be entered this date.
4. The Clerk of the Court is directed to mail a copy of this Memorandum and Order and the Judgment to Jesus Gonzalez at the address of record for his current place of incarceration.

Dated this 21st day of September 2018.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge